Oscar MOORE, Plaintiff-Appellant,

v.

SECRETARY OF the UNITED STATES DEPARTMENT OF HEALTH AND HUMAN SERVICES, Defendant-Appellee.

No. 215, Docket 84–6359.

United States Court of Appeals, Second Circuit.

Argued Oct. 3, 1985.

Decided Dec. 5, 1985.

Jane C. Reinhardt, Bay Shore, N.Y., (Leonard S. Clark, Nassau/Suffolk Law Services Committee, Inc., Bay Shore, N.Y., of counsel), for plaintiff-appellant.

Michael P. Diraimondo, Sp. Asst. U.S. Atty., Brooklyn, N.Y., (Raymond J. Dearie, U.S. Atty., E.D.N.Y., Robert L. Begleiter, of counsel), for defendant-appellee.

Before NEWMAN, CARDAMONE and MINER, Circuit Judges.

MINER, Circuit Judge.

Oscar Moore appeals from a final judgment and order entered in the United States District Court for the Eastern District of New York (Mishler, *J.*), which upheld his claim for the payment of Social Security disability benefits but determined the period of disability not to have commenced until April 13, 1982.[1] For the reasons set forth below, we reverse.

## I. BACKGROUND

Moore was born in 1926 and completed eight grades of formal education. From 1964 until May of 1980, he was employed as a porter for Grumman Aerospace. Moore's medical records reveal a prolonged history of substantial alcohol abuse leading to chronic schizophrenia and dementia. Beginning in 1978, Moore was periodically admitted to various hospitals for detoxification and psychiatric treatment.[2] On October 3, 1980, Moore, who then was no longer employed, was admitted to the Central Islip Psychiatric Center ("CIPC") with a diagnosis of acute alcohol intoxication. On discharge, Moore was found to have responded well to the detoxification treatment plan and his mental condition was recorded as improved. Moore was readmitted to CIPC on May 20, 1981. The admission summary contained statements from his wife that his behavior had been irrational and destructive for the past month and that he had engaged in exhibitionism. Moore was discharged on June 18, 1981, in an improved condition but with the prognosis of a probable relapse into alcohol abuse.

Sometime in July of 1981, Moore was arrested for disorderly conduct involving an incident of public defecation. He was confined at the Suffolk County Correctional Facility and then transferred to CIPC, where he expressed persecutory delusions and was noted to be restless, irritable and anxious. Moore was discharged from CIPC on August 26, 1981 and returned to the Suffolk County Correctional Facility; his general condition and behavior were found to have improved. Less than one month later, Moore was arrested again for defecating on a church altar. He was returned to CIPC on October 2, 1981 by the Suffolk County District Court, and was diagnosed as suffering from alcohol abuse and chronic residual schizophrenia.

Altogether, Moore had been hospitalized for approximately four and one-half of the last seven months of 1981. These periods of hospitalization generated a host of clinical reports from the various attending physicians. The earliest report of Moore's condition is a discharge summary prepared by a CIPC psychiatrist for the May 20th to June 18th confinement. The psychiatrist recorded various signs of Moore's condition including untidiness, uncooperativeness, hostility, irrationality of thought processes, constricted affect, grandiosity, disorientation as to time, auditory hallucinations, lack of insight, and impairment of judgment. On admission, Moore was found to have suffered from chronic undifferentiated schizophrenia with acute exacerbation; on discharge, the psychiatrist noted that Moore suffered from continuous alcohol abuse.

Another CIPC psychiatrist made similar findings on Moore's discharge summary for the period July 27th to August 26th. In particular, the psychiatrist noted Moore's irritability, restlessness and anxiousness, his expression of paranoid persecutory delusions, poor time orientation, moderate memory impairment and impaired insight and judgment. The psychiatrist concluded that Moore suffered from dementia associated with moderate alcoholism. A third discharge summary, relating to Moore's October 2nd to December 21st confinement at CIPC, prepared by yet an-

---

1. The Secretary does not appeal Judge Mishler's finding that disability was established for the period subsequent to April 13, 1982.

2. While 1978 marked the beginning of substantial periods of hospitalization, the administrative record discloses that Moore was treated for schizophrenia and alcoholism as early as 1970.

other psychiatrist, reiterated these or similar diagnoses and added findings of significant amnesia and intellectual deterioration. This psychiatrist concluded that Moore suffered from continuous alcohol dependence and residual chronic schizophrenia.

On April 13, 1982, Moore's treating psychiatrist, Dr. Friedland, submitted a psychiatric evaluation noting that although Moore had no functional psychotic disorders as of that date, his ability to engage in daily occupational activity was moderately impaired and his ability to exercise judgment, to tolerate work-related stress, to take care of personal hygiene and personal needs, to comprehend and follow instructions, to perform work requiring minimal contact with others, and to perform complex, repetitive and varied tasks was severely impaired. Dr. Friedland diagnosed Moore as being alcohol dependent and having dementia associated with alcoholism. Dr. Friedland offered his medical assessment that Moore's impairments had lasted or would last twelve months or longer. It was largely on the basis of this evidence that Judge Mishler concluded that Moore was thenceforth disabled.[3]

Two additional items contained in the administrative record relating to the onset of disability prior to April of 1982 are worth noting.[4] The first is a vocational assessment made on May 18, 1982 by a vocational counselor who had observed Moore's participation in a sheltered workshop program since January of 1982. According to the assessment, Moore's productivity at the workshop was only eleven percent of the competitive norm and he had made little progress since he started working there in January. Significantly, the counselor expressed the opinion that Moore did not "have the ability to be considered for competitive employment now or in the future." Second, there is a June 1982 medical report prepared by Dr. Su of the Patchogue Clinic, where Moore had been receiving monthly treatment since January of 1982. Dr. Su's report noted Moore's signs of poor judgment and partial insight, as well as symptoms of blackouts and alcolepsy.

Moore initially filed an application for Social Security benefits in June of 1981. Additional applications were made in November and December of 1981. Those applications were denied initially and on reconsideration. Moore requested a hearing, which was held on May 21, 1982. The Administrative Law Judge ("ALJ") affirmed the denial of benefits on the ground that Moore's disability, which was found to have begun on April 13, 1982, had not lasted and could not be expected to last at least twelve months. *See* 42 U.S.C. § 423(d). On January 25, 1983, the Appeals Council denied Moore's request for review. Moore then commenced this action on June 20, 1983,[5] seeking review of the Secretary's final determination. 42 U.S.C. §§ 405(g), 1383(c)(3).

In a Memorandum of Decision and Order dated October 3, 1984, Judge Mishler found the Secretary's determination not to have been supported by substantial evidence and concluded that Moore was disabled as of April 13, 1982. Accordingly, he reversed the ALJ's decision and ordered the calculation and payment of benefits as of that date. Subsequently, Moore sought to amend that judgment, *see* Fed.R.Civ.P. 60(b), to provide for a finding of the onset of disability as of April 20, 1981, approximately one year earlier. By Memorandum of Decision and Order dated June 4, 1985,

3. While this same evidence also convinced the Secretary that Moore suffered from a severe impairment, she refused to find the impairment had lasted, or was expected to last, for 12 months.

4. While the administrative record contains additional evidence concerning Moore's deteriorating condition subsequent to April of 1982, those facts are irrelevant for purposes of the present appeal, since the parties do not dispute the presence of a disability as of April 13, 1982.

5. Although Moore exceeded the 60-day time limit prescribed by 42 U.S.C. § 405(g) within which to seek district court review of an adverse Appeals Council decision, the Appeals Council granted Moore an extension of time in which to file suit.

Judge Mishler denied that application. This appeal followed.

## II. DISCUSSION

The governing legal standard is not disputed; the Secretary's determination will be disturbed only if not supported by substantial evidence. 42 U.S.C. § 405(g); *Richardson v. Perales*, 402 U.S. 389, 401, 91 S.Ct. 1420, 1427, 28 L.Ed.2d 842 (1971). Substantial evidence may be found whenever the record contains "such relevant evidence as a reasonable mind might accept as adequate to support [the] conclusion." *Richardson v. Perales*, 402 U.S. at 401, 91 S.Ct. at 1427. Bearing in mind that the burden of establishing disability rests with the claimant, *Dumas v. Schweiker*, 712 F.2d 1545, 1550 (2d Cir.1983); *Parker v. Harris*, 626 F.2d 225, 231 (2d Cir.1980), we nonetheless agree with Judge Mishler that the Secretary's finding of no disability was not supported by substantial evidence. We also find, however, that the onset of Moore's disability is to be traced back to April of 1981, and not, as found by Judge Mishler, April of 1982. Accordingly, we reverse.

In order to establish disability, a plaintiff must demonstrate an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). An impairment is not disabling unless it is "of such severity that [the claimant] is not only unable to do his previous work but cannot, considering his age, education and work experience, engage in any other kind of substantial gainful work which exists in the national economy...." *Id.* § 423(d)(2)(A).

■ There is no question that Moore carried his burden of demonstrating his disability for the period in dispute and that the Secretary failed to rebut that showing by proving the existence of other substantial gainful work in the national economy which Moore could have performed. *See*

*Berry v. Schweiker*, 675 F.2d 464, 467 (2d Cir.1982); *Parker v. Harris*, 626 F.2d at 231. The thrust of the Secretary's position on appeal is simply that Moore has failed to show that his condition in the twelve months prior to April of 1982 continuously precluded him from engaging in his past relevant work as a porter. In support of this position, the Secretary relies on isolated segments of the record, disclosing what can only be characterized as marginal and sporadic evidence of Moore's improvement. When viewed in its entirety, however, the record reveals abundant support for the conclusion that Moore was disabled as early as April of 1981, and a dearth of evidence of his ability to engage in substantial gainful activity.

■ Moore's prolonged bouts with alcohol related psychoses commenced as early as 1970, but certainly intensified through and beyond 1981. His condition required frequent, and sometimes extended, hospital admissions. Indeed, during the last seven months of 1981, Moore was hospitalized, and therefore wholly unemployable, for nearly four and one-half months. Despite apparent moderate improvement upon each discharge, Moore's prognosis, borne out by each subsequent hospitalization, was not favorable. For example, a June 18, 1981 discharge summary noted that Moore would probably resume drinking and might become disturbed and violent. That forecast was realized when Moore was admitted to CIPC in July and again in October, the latter admission extending for nearly two months. The symptoms precipitating Moore's several admissions, and the clinical diagnoses offered each time, demonstrate beyond doubt an inability to engage in substantial gainful employment. The fact that Moore responded at least somewhat to treatment simply is not persuasive evidence to the contrary; following closely on the heels of each advance was a relapse into a worsening condition. Although Moore's various discharge summaries noted improvement in his condition, none offered cause for vocational optimism. *Cf. Morrone v. Secretary of Health, Education*

*and Welfare,* 372 F.Supp. 794, 800 (E.D.Pa. 1974) (disability found despite fact that plaintiff's chronic paranoid schizophrenia was in remission, since remission was likely to be temporary only). Indeed, although Moore remained unhospitalized for the first four months of 1982, the rehabilitation counselor's vocational assessment indicated a productivity level of only eleven percent. While the evidence of Moore's disability after April of 1982 clearly is more substantial than that accumulated in the preceding year, we cannot say that the earlier evidence was inadequate to support a finding of disability.

The Secretary contends, and the District Court apparently believed, that the psychiatric evaluation of Moore's treating physician, Dr. Friedland, expressed no opinion as to Moore's condition prior to April 13, 1982, the date of the evaluation. The parties do not dispute, and Judge Mishler expressly found, that that report, coupled with the consultative reports of Doctors Su and Correoso, established the existence of a severe, worklimiting impairment. We disagree with the Secretary's statement that "Dr. Friedland expressed no opinion regarding plaintiff's condition prior to 1982." The evaluation form completed by Dr. Friedland instructed the doctor to indicate as to particular restrictions if the patient's impairment *has lasted* or can be expected to last for twelve months or longer. Dr. Friedland answered affirmatively with respect to all significant restrictions bearing on an ultimate finding of disability. Based upon Moore's rather dismal prior history, it is entirely reasonable to conclude that Dr. Friedland did in fact comment, albeit not unambiguously, on the period prior to April of 1982 and expressed an opinion that the noted impairments had in fact lasted for twelve months. This opinion of Moore's treating physician is, of course, binding on the Secretary unless contradicted by substantial evidence to the contrary. *Bluvband v. Heckler,* 730 F.2d 886, 892 (2d Cir.1984). Not only is the record here devoid of contradictory evidence, but it contains the conclusions of two consultative physicians, Doctors Su and Correoso, both of whom completed residual functional capacity evaluations indicating that Moore's impairment had lasted or could be expected to last for twelve months.[6]

The Secretary concedes that throughout 1980 and 1981, Moore was suffering from alcoholism, but argues that the presence of alcoholism is not disabling per se. *See* 20 C.F.R. § 404.1525(e) (1985); *Carter v. Schweiker,* 649 F.2d 937, 941 (2d Cir.1981) (alcoholism not disabling unless accompanied by additional physical or mental impairment); *Fields v. Secretary of Health, Education and Welfare,* 444 F.Supp. 1003, 1008 (S.D.N.Y.1977). Here, however, plaintiff clearly was afflicted with more than simple alcoholism. Guidance in determining an alcohol induced disability is to be found in the Secretary's own regulations concerning nonpsychotic functional disorders. Among the mental impairments listed in the Secretary's regulations and considered by the Secretary to be severe enough to warrant a finding of disability, *see* 20 C.F.R. § 404.1525(a), (e) (1985), is addictive dependence on alcohol coupled with certain clinical signs. Disability will only be found if the claimant manifests one or more of those signs and experiences functional limitations as listed in the following regulation:

12.04 *Functional nonpsychotic disorders* (psychophysiologic, neurotic, and personality disorders; addictive dependence on alcohol or drugs). With both A and B:

A. Manifested persistence of one or more of the following clinical signs:

1. Demonstrable and persistent structural changes mediated through psychophysiological channels (e.g., duodenal ulcer); or

2. Recurrent and persistent periods of anxiety, with tension, apprehension,

---

**6.** Doctor Su's evaluation was dated June 7, 1982; Doctor Correoso's evaluation was dated July 29, 1982.

and interference with concentration and memory; or

3. Persistent depressive affect with insomnia, loss of weight, and suicidal preoccupation; or

4. Persistent phobic or obsessive ruminations with inappropriate, bizarre, or disruptive behavior; or

5. Persistent compulsive, ritualistic behavior; or

6. Persistent functional disturbance of vision, speech, hearing, or use of a limb with demonstrable structural or trophic changes; or

7. Persistent, deeply ingrained, maladaptive patterns of behavior manifested by either:

   a. Seclusiveness or autistic thinking; or

   b. Pathologically inappropriate suspiciousness or hostility;

B. Resulting persistence of marked restriction of daily activities and constriction of interests and deterioration in personal habits and seriously impaired ability to relate to other people.

20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.04 (1985). Here, the record supports the existence of categories A(2), A(4) and perhaps A(7)(b), as well as the required B. For example, the June 18, 1981 discharge summary of a CIPC psychiatrist recorded, *inter alia,* Moore's hostility and irrationality of thought processes, and an August 26, 1981 discharge summary noted Moore's irrationality, restlessness and anxiousness, and his expression of paranoid persecutory delusions.

In short, the conclusion is inescapable that Moore was disabled within the meaning of the Social Security Act commencing one month prior to his May 20, 1981 admission to CIPC.[7] The extent and duration of Moore's mental impairments, the severity

of which were borne out by the later but inexorable worsening of his condition, clearly prevented Moore from engaging in substantial gainful employment with any degree of regularity. The Secretary's conclusion to the contrary, not being supported by substantial evidence, cannot stand.[8]

### III. CONCLUSION

Because we find plaintiff to have been disabled as of April 20, 1981, we reverse the decision below with instructions to the District Court to remand to the Secretary for the calculation and payment of benefits for the period commencing April 20, 1981.

---

7. In addition to Dr. Friedland's April 1982 determination that Moore's impairments had lasted for 12 months, the CIPC discharge summary relating to the May 20, 1981 admission contained the statement by Moore's wife that he had been irrational and destructive for the preceding month.

8. There is no need to address Moore's additional argument regarding Judge Mishler's alleged error in not treating the November 1981 application as a motion to reopen the June 1981 application, since a favorable determination of that point would not entitle Moore to any additional benefits.