**Thomas O'CONNOR,
Plaintiff–Appellant,**

v.

**Louis W. SULLIVAN, Secretary of
Health and Human Services,
Defendant–Appellee.**

**No. 90–3084.**

United States Court of Appeals,
Seventh Circuit.

Argued May 31, 1991.

Decided July 23, 1991.

Rehearing Denied Oct. 8, 1991.

David N. Kornfeld, Evanston, Ill., for plaintiff-appellant.

Gail C. Ginsberg, Asst. U.S. Atty., Fred Foreman, U.S. Atty., Office of U.S. Atty., Crim. Div., Michael S. Messer, Dept. of Health and Human Services, Region V, Office of Gen. Counsel, Nancy K. Needles, Asst. U.S. Atty., Office of U.S. Atty., Civ. Div., Appellate Section, Chicago, Ill., for defendant-appellee.

Before CUDAHY, POSNER, and RIPPLE, Circuit Judges.

POSNER, Circuit Judge.

Thomas O'Connor appeals from a decision by the district court upholding the denial by the Social Security Administration of O'Connor's application for disability benefits. At the time of his hearing before an administrative law judge, O'Connor was 47 years old. He had not worked since the year after one lobe of his left lung was removed as a result of a gunshot wound; until then he had done strenuous unskilled factory work as an assembler and janitor. Besides having lost some pulmonary capacity as a consequence of the lobectomy, O'Connor has diabetes. He is also an alcoholic, who for several years before the hearing had been drinking two to three pints of hard liquor a day. Although his diabetes is controllable by diet and medicine, his alcoholism causes him at times to go off his diet and forget to take his medicine, and a frequent result is seizures and other medical crises requiring hospitalization. Yet at the time of the hearing his formidable intake of liquor had not yet impaired his mental capacity significantly, or prevented him from living without supervision. That mental capacity, however, is limited. O'Connor is illiterate and has an IQ of 74. The administrative law judge concluded that O'Connor, who spends his days cooking, washing dishes, playing cards, visiting with friends—and, of course, drinking—is physically and mentally capable of doing light unskilled work; therefore he is not totally disabled.

■ Mr. O'Connor is unemployable. Who would hire a person with such a combination of physical and mental impairments? His heavy drinking alone would make him a considerable menace to himself and others in his place of work, and he has no offsetting skills to offer. It is true that the social security disability program is not an unemployment program. A partial disability that in other than the tightest labor markets would keep a worker of limited skills from getting or holding a job creates no entitlement to disability benefits. The disability must be total, 42 U.S.C. §§ 423(d)(1), (2); *Stephens v. Heckler*, 766 F.2d 284, 285 (7th Cir.1985); *DeFrancesco v. Bowen*, 867 F.2d 1040, 1042 (7th Cir. 1989), implying that the applicant's job prospects would be vanishingly poor even in a tight market. *Cummins v. Schweiker*, 670 F.2d 81, 83–84 (7th Cir.1982). The judgment required by such a standard is—judgmental, subjective. To cabin the discretion of its hundreds of administrative law judges, the Social Security Administration has promulgated regulations designed to enable most disability cases to be decided mechanically, by identifying specific factors pertinent to the applicant's job prospects and then reading off the decision from a grid on which those factors (the severity of the impairment and the applicant's age, education, and previous work experience) are arrayed. 20 C.F.R. pt. 404, Subpt. P, App. 2 ("Medical Vocational Guidelines"); *Heckler v. Campbell*, 461 U.S. 458, 103 S.Ct. 1952, 76 L.Ed.2d 66 (1983).

■ By a further simplification, even before he gets to the grid an applicant may be able to establish his entitlement to benefits by showing that he has an impairment equal in severity to a list of severe impairments that the Social Security Administration maintains. 20 C.F.R. §§ 404.1520(d), 416.920(d); *Sullivan v. Zebley*, 493 U.S. 521, 110 S.Ct. 885, 892, 107 L.Ed.2d 967 (1990); *Davidson v. Secretary of Health & Human Services*, 912 F.2d 1246, 1252–53 (10th Cir.1990) (per curiam). One of these "listed impairments," as they are called, is a pulmonary diffusing capacity of fewer than 6 milliliters of hemoglobin per minute. "Diffusing capacity" is the capacity of the

73

lungs to distribute oxygen to the blood. A capacity of fewer than 6 milliliters of hemoglobin per minute indicates a severe chronic pulmonary impairment—so severe that the regulations deem it conclusive evidence of total disability. The record contains a test of O'Connor's diffusing capacity that shows it to be below the 6 milliliter threshold. One might have thought that this would be the end of the case. But the administrative law judge unaccountably found that O'Connor had only a slight pulmonary impairment, and the district judge, while catching the error, held that it was harmless, because the medical record as a whole supported (in his view) the conclusion that O'Connor's pulmonary impairment was indeed only slight.

■ In so ruling the district judge misconstrued the regulations. To establish disability all that the record need show is *one* listed impairment. 20 C.F.R. § 404.1520(d); *Moon v. Sullivan*, 923 F.2d 1175, 1181 (6th Cir.1990). Several of the listed impairments pertain to lung capacity. O'Connor failed to come up (or rather down) to the levels specified in these listings, other than the one for diffusing capacity, and perhaps on a holistic judgment of the state of his lungs this failure shows that his performance on the diffusion test does not establish total disability. But the regulations do not permit a holistic judgment against the applicant. To repeat, all that the record need show is one listed impairment. Period.

■ True, the test establishing the impairment must be a valid test. 42 U.S.C. § 423(d)(3); *Muse v. Sullivan*, 925 F.2d 785, 790 (5th Cir.1991) (per curiam). The government argues that the diffusion test result for O'Connor was invalid. It bases the argument on some enigmatic notations that appear on the test form. The argument misconceives the relationship between an administrative agency and a reviewing court. We have no authority to supply a ground for the agency's decision. *SEC v. Chenery Corp.*, 318 U.S. 80, 94, 63 S.Ct. 454, 462, 87 L.Ed. 626 (1943); *Brown v. Bowen*, 794 F.2d 703, 708 n. 7 (D.C.Cir. 1986); *Pate v. Director*, 834 F.2d 675, 676

(7th Cir.1987). The administrative law judge did not reject O'Connor's claim on the ground that the test result was invalid. He said that "recent pulmonary function testing has shown only a mild restrictive defect." Either he overlooked the result of the diffusion test entirely, or he balanced that result against the results of the other tests; either way he was wrong and we cannot rectify the error by playing administrative law judge.

■ The administrative law judge's opinion is inadequate in another respect, the treatment of O'Connor's alcoholism. He pronounced O'Connor generally credible and apparently believed his testimony that he drinks two or three pints of hard liquor a day (with occasional heavy binges—once O'Connor was hospitalized after downing a half gallon of vodka). But he concluded that O'Connor's alcoholism was not disabling because it has not yet severely damaged his brain, as shown not only by the results of neurological tests but also by his ability to take care of himself, play cards, etc. This cannot be dispositive. The fact that an alcoholic has not yet been drinking to excess long enough to destroy his brain, and therefore can get through the day, does not establish that he is able to hold a job. *Purter v. Heckler*, 771 F.2d 682, 696–98 (3d Cir.1985); *Cooper v. Bowen*, 815 F.2d 557, 560–61 (9th Cir.1987). These decisions are, it is true, in tension with decisions such as *Smith v. Secretary of Health & Human Services*, 893 F.2d 106, 110 (6th Cir.1989), which insist that the applicant's drinking have "kept her from pursuing her normal day-to-day activities." But we do not think the latter decisions are sound. The conditions of work are not identical to those of home life. (Of course it is possible that O'Connor does all his drinking at night, but there is no evidence of this.) Another point ignored by the administrative law judge is that O'Connor's alcoholism interacts with his diabetes (and perhaps his other conditions—impaired lung capacity, hypertension, and what appears to be severe weight loss) to cause frequent hospitalizations.

■ The regulations make clear that alcoholism is not a listed impairment, 20 C.F.R. § 404.1525(e), an impairment (as we said) that without more demonstrates total disability under the regulations. "Alcoholism" is a vague term that can mean simply drinking steadily to excess; the degree of excess and the stubbornness of the habit are critical to a decision whether it is totally disabling, and that is a case-specific inquiry. If alcoholism causes physical or behavior changes sufficient to satisfy the criteria for a listed impairment, then the applicant is entitled to benefits without having to make a further showing. 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.09. If not, not. But of course impairments that are not so grave and irremediable that they can be categorically pronounced permanently disabling are not thereby rendered irrelevant to a judgment of disability. They just require a further inquiry. *Moore v. Secretary of U.S. Dept. of Health & Human Services*, 778 F.2d 127, 131–33 (2d Cir. 1985), by citing as if relevant a decision construing an earlier regulation, more restrictive than the present one, which made alcoholism a ground for finding disability only if it produced one or more listed impairments, *Carter v. Schweiker*, 649 F.2d 937, 941 (2d Cir.1981), could be read to have interpreted the present regulation, 20 C.F.R. § 404.1525(e), as having the same meaning. But the present regulation is different. It says merely that alcoholism is not a listed impairment. Anyway the applicant in *Moore* was arguing only that his alcoholism had produced a listed impairment (the court agreed and reversed). The question of the significance of alcoholism when it does not cause a listed impairment was not presented.

The administrative law judge did not make the error of thinking that alcoholism is irrelevant to disability unless it causes a listed impairment. Having properly rejected alcoholism as a listed impairment he, also properly, proceeded to the next step in the disability algorithm and inquired whether O'Connor's impairments, singly or in combination, permanently disabled him from doing his past work as a factory assembler and janitor. He found that they did. This brought him to the question whether O'Connor's residual physical and mental capacity was sufficient to permit him to do any other work. The administrative law judge concluded that, given O'Connor's age and other work-related characteristics, as well as his physical and mental impairments, he had sufficient residual capacity to do light unskilled work. It was at this stage of the inquiry that the administrative law judge considered the bearing of O'Connor's alcoholism, but he considered it mechanically, inquiring only whether the alcoholism had so impaired O'Connor's brain that he could no longer live on his own. That was the wrong inquiry. The question is not whether one can survive in a noninstitutional setting—feed oneself, socialize, etc.—but whether one can work. They are not identical questions. A higher degree of sobriety is required to hold a job than to stay out of an institution for the mentally incompetent. If, like the applicant in *Ferguson v. Heckler*, 750 F.2d 503, 505 (5th Cir.1985), O'Connor is unable to control his drinking, and unable to do even light work unless he does control his drinking, then he is totally disabled. The administrative law judge, as in *Cannon v. Harris*, 651 F.2d 513, 519 (7th Cir.1981) (per curiam), failed to investigate these questions. See also *Petition of Sullivan*, 904 F.2d 826, 843 (3d Cir.1990).

The judgment upholding the denial of disability benefits is reversed and the matter is returned to the Social Security Administration for further proceedings consistent with this opinion.

REVERSED, AND REMANDED WITH DIRECTIONS.