Emanuel FRANKLIN, Plaintiff,

v.

Donna SHALALA, Secretary of Health and Human Services, Defendant.

No. 94 C 4069.

United States District Court,
N.D. Illinois,
Eastern Division.

Feb. 2, 1995.

Beth A. Alpert, Chicago, IL, for plaintiff.

Ernest V. Ling, Asst. U.S. Atty., Chicago, IL, for defendant.

### MEMORANDUM OPINION AND ORDER

SHADUR, Senior District Judge.

Emanuel Franklin ("Franklin") appeals the final decision of Department of Health and Human Services Secretary Donna Shalala ("Secretary") denying Franklin's claims for disability insurance benefits and supplemental social security income under. the Social Security Act ("Act"), 42 U.S.C. §§ 416(i), 423, 1382 and 1382c.[1] As usual in such cases, Franklin and Secretary have filed cross-motions for summary judgment under Fed. R.Civ.P. ("Rule") 56, with Franklin alternatively moving for a remand. For the reasons stated in this memorandum opinion and order, Franklin's motions are denied and Secretary's motion is granted.

---

1. Further citations to the Act's provisions will take the form "Section —," using the Title 42 numbering rather than the Act's internal numbering. Pertinent regulations from 20 C.F.R. will be cited "Reg. § —."

## Facts [2]

Franklin, a 42–year old man, suffers a number of physical and mental impairments arising in large part from his destructive relationship with the bottle.[3] For current purposes it is unnecessary to chronicle the events contributing to Franklin's physical decline. Suffice it to say that Franklin's body has weathered a storm of abuse and yet retains enough of its natural strength and resiliency so that from a physical perspective alone Franklin is capable of substantial gainful activity so as not to be disabled in that respect under the Act.[4]

What is at issue instead is Franklin's mind. Franklin claims that in determining that he was not disabled the ALJ failed to properly account for Franklin's mental impairment.

Franklin has personality and abuse disorders resulting in depression and other features that affect his ability to relate to others in a work setting.

To assess the functional limitations flowing from those disorders, the ALJ filled out the standard form called for by Reg. § 404.1520a (R. 18–20). Dr. John L. Peggau, a licensed psychologist who examined Franklin at his lawyer's request, filled out a slightly different version of the same form (Ex. 20 at R. 151–71 is Dr. Peggau's written report, including that form). What follows reflects ALJ Welsch's and Dr. Peggau's different views (respectively indicated by "W" and "P") as to the extent to which Franklin's mental impairment affects his abilities in four key areas related to work:

1. Restriction of Activities of Daily Living:

| None | Slight | Moderate | Marked | Extreme |
|------|--------|----------|--------|---------|
| [ ]  | [W]    | [P]      | [ ]    | [ ]     |

2. Difficulties in Maintaining Social Functioning:

| None | Slight | Moderate | Marked | Extreme |
|------|--------|----------|--------|---------|
| [ ]  | [ ]    | [W/P]    | [ ]    | [ ]     |

3. Deficiencies of Concentration, Persistence or Pace:

| Never | Seldom | Often | Frequently | Constantly |
|-------|--------|-------|------------|------------|
| [ ]   | [ ]    | [W/P] | [ ]        | [ ]        |

4. Episodes of Deterioration or Decompensation:

| Never | Once/Twice | Repeated | Continual |
|-------|------------|----------|-----------|
| [ ]   | [W]        | [P]      | [ ]       |

ALJ Welsch's opinion said "[t]his form has been prepared in a fashion consistent with the assessment of Dr. John L. Peggau, as well as the record as a whole" (R. 14) and then explained each of her own marks (R. 15):

The undersigned notes that the claimant does live independently. He provides for his daily needs, including maintaining his own household, grocery shopping, doing his laundry, and washing dishes. He also is active hustling and attempting to get

2. What follows is a summary of the Administrative Record (cited "R. —"), including the transcript of Franklin's October 28, 1993 hearing (the "Hearing") before Administrative Law Judge ("ALJ") Barbara Welsch.

3. Alcoholism is not a disability as such and must be evaluated like any other condition in determining whether it has rendered the claimant unfit for work (Reg. § 404.1525(e); *O'Connor v. Sullivan,* 938 F.2d 70, 74 (7th Cir.1991)).

4. Sections 416(i) and 1382c(a)(3)(A) define "disability" as the inability:

to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months...

money for drug and alcohol abuse. As a result, the undersigned finds there is nothing in the record to show that claimant has more than slight difficulties with daily activities.

The claimant said he has been arrested at least ten times and gets into fights when he has been drinking. He describes himself as a loner. He does, however, maintain relationships with a fiance. He also has a friend that he drinks with. He has contact with his mother and sister. Although the claimant may have difficulties in social functioning, the undersigned cannot find that he has more than moderate impairment.

The claimant alleges difficulty with concentration, persistence and pace. Testing by Dr. Peggau indicated that the claimant may, indeed, have such difficulties. The claimant does, however, live independently. He is able to engage in hustling and in acquiring odd jobs. The undersigned finds that the claimant at most would often have deficiencies of concentration, persistence and pace.

The claimant told the doctor that he had been fired from a job; however, he did not indicate that this problem was due to his drinking or drug use. He said he was fired because he was tardy and he blamed his tardiness on his daughter. He said, however, that he has been in fights because of his drinking. He admitted that he had been arrested ten times. The undersigned can find at most that the claimant has had one or two episodes of deterioration or decompensation in the workplace.

After finding that Franklin failed to qualify for any listed impairment, the ALJ proceeded with the familiar five-step process used to evaluate disability claims (Reg. § 404.1520; *Young v. Secretary of HHS*, 957 F.2d 386, 389 (7th Cir.1992)). At steps 4 and 5 she performed a residual functional capacity ("RFC") analysis to determine whether Franklin's combined physical and mental impairments rendered him incapable of returning to his past relevant work as a forklift

and brake press operator [5] or of finding other work in the economy. To assist in that determination the ALJ asked Vocational Expert ("VE") William Fischer (R. 57):

Q: All right, Dr. Fischer, I'm going to ask you a hypothetical question, and I ask that you please disregard any information you may have gathered from reading the file or listening to the testimony, other than that which I give you specifically in the hypothetical. I would like you to assume an individual who is 42 years old with an 11th grade education, who has past relevant work the same as Mr. Franklin, who has an exertional capacity limited to the full range of medium work with the following exceptions. Individual who has an IQ as stated in the file, let's see, it was full scale IQ of 81, performance 85 and verbal of 78. And an individual who would also be limited in that they would have, an individual who could not have constant interaction with others. Can frequently interact with others, but work would be fairly independent. Tasks would be assigned and the individual could do that without constantly interacting with others. And by others I mean coworkers, supervisors and the general public. How would these restrictions effect [sic] the performance of past relevant work?

In response the VE said that such an individual could operate both a forklift and a brake press (R. 57–58). Next the ALJ asked what light or sedentary unskilled entry level work such a person could perform in the economy generally (R. 58), and the VE estimated that there were approximately 33,000 jobs in the immediate area (10,000 cleaning, 8,000 laundry, 15,000 assembly) suitable for a person with physical and mental restrictions as described (R. 58–60).

Franklin's lawyer then sought to pose a different hypothetical question. After several permutations, the question was recast most clearly by the ALJ and answered in these terms (R. 61–62):

---

**5.** Franklin had worked from 1981 to 1989 as a brake press operator for Ramcor Products and, before that, from 1971 to 1976 as a clamp truck/forklift operator for Sweetheart Cup Company (R. 36–43, 153, 186).

ALJ: Okay. So the question is, could an individual with these check marks and circles [6] be able to work?

\* \* \* \* \* \*

VE: Oh, okay. Based on all this information in Exhibit 20, my opinion is that the employer would have to make special concessions or considerations for the employee, because of those limitations and residual function capacities. And when that happens, it means that the employment is sympathetic. And sympathetic employment doesn't exist in significant numbers in the local or national economy.

ALJ Welsch concluded that given Franklin's age, education, past work experience and RFC, he could perform his past relevant work as a fork lift and brake press operator or other light or medium work in the economy (cleaning, laundry, assembly). Hence he was found not disabled.

### ALJ's Rejection of Dr. Peggau's Opinion

Most of the case law in this area deals with the weight to be ascribed to the opinions of medical doctors (hence the often-repeated admonition that no ALJ should attempt to "play doctor"). Psychologists such as Dr. Peggau do not have M.D. degrees and cannot prescribe medication—but because the Regulations do speak of such professionals as "acceptable medical sources" and because the same legal principles should apply to their opinions, this Court will follow that lead. With apologies to purists, then, this opinion will also occasionally use the term "medical" in that broadened sense.

Franklin claims that by forming an independent judgment about the nature and severity of his mental impairment the ALJ improperly substituted her own untrained opinion for that of Dr. Peggau, the only licensed psychologist who examined Franklin. Franklin's Mem. 12 urges:

1. "By substituting her own judgment as to the psychological impairment and limitations the ALJ committed an error of law."

2. "The ALJ's findings are not supported by the record on the whole."

That first proposition misstates the law, while the second fails in light of the Administrative Record and the applicable standard of review.

As indicated earlier, Reg. § 404.1527(a)(2) defines "medical opinions" as "statements from physicians and psychologists or other acceptable medical sources that reflect judgments about the nature and severity of your impairment(s), including [ ] symptoms, diagnosis and prognosis, and what you can still do despite impairment(s), and your physical or mental restrictions." Reg. § 404.1527(b) provides that medical opinions will be considered together with other relevant evidence in determining disability.

Reg. §§ 404.1527(c) and (d) set the standards for evaluating such opinion evidence. If the source is a treating physician [7] and the opinion itself is both well-supported and consistent with the other evidence, it is assigned controlling weight (Reg. § 404.1527(d)(2)). Otherwise the ALJ must decide what weight to assign, considering several listed factors (including (i) the existence, nature and extent of any treatment or examining relationship; (ii) the extent to which the opinion is supported by medical evidence and is consistent with record as a whole; and (iii) whether the opinion is rendered in an area of specialty) (Reg. § 404.1527(d)). Reg. § 404.1527(e)(2) specifies that when a medical opinion is offered in the critical areas of listed impairment, RFC, application of vocational factors and the ultimate question of disability, the

---

6. "Check marks" refers to the "P" entries in the earlier-reproduced standard form. "Circles" refers to marks that Dr. Peggau made on a four-page document entitled "Mental Residual Functional Capacity Evaluation" (R. 168–71). Those entries said that Franklin has a "Marked" inability (1) to understand, remember and carry out detailed and complex job instructions, (2) to interact with supervisors and supervisory demands in a competitive job setting and (3) to respond to customary work pressure five days a week in a routine setting (R. 168–71), and that Franklin has "Moderate" difficulties in following simple job instructions and interacting with supervisors, coworkers and the public (id.).

7. For the reason stated earlier, the proposition stated in the text presumably embraces "treating" psychologists too.

ALJ is *not* bound by that opinion. Instead the "final responsibility for deciding these issues is reserved to the Secretary" (and through her to the ALJ, see Reg. § 404.1546).

Dr. Peggau offered his opinion in precisely the areas reserved for the ALJ. Not only did Dr. Peggau perform a listed impairment analysis, he used the same standardized form. And it will be recalled that the last four pages of Dr. Peggau's report were expressly labeled as an RFC evaluation. Under the Regulations the ALJ was not bound by Dr. Peggau's opinion and did not err as a matter of law in refusing to adopt lock-stock-and-barrel the diagnoses and conclusions contained in Dr. Peggau's report.

■ On this appeal the proper inquiry is not whether the ALJ was permitted to form her own opinion, but rather whether that opinion is supported by substantial evidence. Franklin argues that it is not. But Congress has specified the standard for review by providing that "[t]he findings of the Secretary as to any fact, if supported by substantial evidence, shall be conclusive" (Act § 405(g)). And *Richardson v. Perales,* 402 U.S. 389, 401, 91 S.Ct. 1420, 1427, 28 L.Ed.2d 842 (1971) quotes the *Consolidated Edison Co. v. NLRB,* 305 U.S. 197, 229, 59 S.Ct. 206, 217, 83 L.Ed. 126 (1938) definition of "substantial evidence" as:

> more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.

■ That test is not very demanding. It is thus understandable that *Ehrhart v. Secretary of HHS,* 969 F.2d 534, 538 (7th Cir.1992) (citations omitted) frames the reviewing court's function in these terms:

> [W]e may not reweigh the evidence or decide whether a claimant is disabled. Nor may the court substitute its own judgment for that of the Secretary. By the same token, we must do more than rubber stamp the decisions of the Secretary.

Accord, *Cass v. Shalala,* 8 F.3d 552, 554–55 (7th Cir.1993). Consequently an ALJ's determination as to the weight to be assigned to a medical opinion will generally not be disturbed absent some indication that the ALJ has dredged up "specious inconsistencies" (*Scivally v. Sullivan,* 966 F.2d 1070, 1077 (7th Cir.1992)) or has relied upon some other intellectually dishonest means to discount any opinion at odds with the ALJ's own findings (see, e.g., *Hargis v. Sullivan,* 945 F.2d 1482, 1487–88 (10th Cir.1991)).

■ ALJ Welsch agreed with Dr. Peggau that Franklin has moderate difficulties in maintaining social functioning and often experiences deficiencies of concentration, persistence and pace. She disagreed, however, as to the degree to which Franklin is restricted in his daily activities. Franklin spends 3 to 4 hours a day "hustling" (that is, performing odd jobs for money) (R. 46). He cooks, cleans, and shops for himself (R. 50). He plays cards and shoots pool (R. 51). And the balance of his time is spent drinking (R. 52–53). That active daily regimen provides the requisite substantial evidence to support the ALJ's conclusion that despite his mental impairments Franklin is only slightly restricted.

■ ALJ Welsch also disagreed with Dr. Peggau as to the number of times per week that Franklin was likely to deteriorate or decompensate at work. Franklin admits to downing four quarts of wine and three to four 40-ounce bottles of beer a day and understandably exhibits signs of severe alcohol addiction (the "shakes," blackouts, hearing voices) (R. 45, 52, 54, 154, 157). He supplements his liquid diet with four to five grams of cocaine per week (R. 45). In combination with a quick temper, his heavy drinking makes it difficult for Franklin to get along with others (R. 37). Franklin stated that he gets into fights while drunk and has been arrested a number of times for disorderly conduct (R. 54, 157).

As bleak as that picture is, the relevant question for current purposes is the effect that his drug and alcohol abuse have had on Franklin's ability to control himself in a work setting. At the Hearing Franklin blamed alcohol for his dismissal from his job with Ramcor Products (R. 37). But Franklin told Dr. Peggau that he had never lost a job on account of alcohol and that he quit Ramcor following heart surgery because the job made

him feel nauseated (R. 153, 157). Franklin told the ALJ that he left his earlier position with Sweetheart Cup Company because he found other employment (R. 39). He told Dr. Peggau that he was fired for showing up late too often and blamed his daughter, who he said he was required to care for in the mornings (R. 153). Absent proof that Franklin has in fact exhibited significant decompensation in the workplace, the ALJ's determination that in light of his heavy drinking and short temper he was likely to experience one or two episodes per week is not unreasonable and rests on such evidence as Franklin chose to provide.

■ ALJ Welsch and Dr. Peggau had different views of Franklin's mental RFC. She summarized Franklin's non-physical limitations in the already-quoted portion of her hypothetical question to the VE. That description adopts Dr. Peggau's diagnosis that Franklin has difficulty interacting with others, though it does not incorporate Dr. Peggau's view that Franklin has "Marked" inability to respond to work pressures. But the latter diagnosis is inconsistent with Franklin's testimony that in almost 20 years he had never (or had at most only once) lost a job as a result of his drinking. ALJ Welsch also did not include Dr. Peggau's conclusion that Franklin has difficulties following instructions, but that latter conclusion is not wholly consistent with Franklin's demonstrated ability both to hold long-term jobs in the past and to obtain and perform shorter-span jobs currently as the result of his hustling. In sum, all of what was included in the ALJ's description to the VE was supported by substantial evidence.

### Hypothetical Questions

■ Franklin's Mem. 13–14 challenges the ALJ's hypothetical question on the grounds that it failed to "relate with precision *all* of social security claimant's impairments" (emphasis added). Franklin's Mem. 14 cites the Tenth Circuit's *Hargis* opinion for the proposition that a hypothetical that is less than complete cannot constitute substantial evidence. While *Hargis* may state the rule elsewhere, our Court of Appeals has developed a different test and requires only that

the hypothetical question be appropriately supported by medical evidence (*Cass*, 8 F.3d at 555–56; *Ehrhart*, 969 F.2d at 540).

■ To be sure, the ALJ's hypothetical question does not explicitly incorporate reference to Franklin's alcohol abuse. But what is relevant in determining the existence or nonexistence of a disability is not the *fact* that Franklin drinks but what *effect* alcohol has had on his ability to sustain employment. ALJ Welsch reasonably determined that alcohol has limited Franklin's ability to interact with others in a work setting, and she incorporated that finding into her question. That was the correct way to address the issue. Thus is it not accurate to say that her hypothetical question did not incorporate all of Franklin's physical and mental limitations. For the reasons discussed at length in the preceding section, the ALJ's hypothetical finds more than adequate support in the evidence.

This case presents a sharp contrast to *O'Connor* (see n. 2), which dealt with a claimant who shared the same heavy drinking problem that Franklin exhibits. There the ALJ's no-disability finding was reversed because the ALJ had focused on the claimant's ability to "live on his own," not whether he could work. But here ALJ Welsch properly examined the latter question and concluded that despite the astonishing quantity of alcohol Franklin ingested, he could still function in a working environment (something that is scarcely a rare phenomenon among alcoholics). And that evidence-supported conclusion makes the dispositive difference in this case.

### Conclusion

ALJ Welsch was not bound by Dr. Peggau's opinion, and her independent evaluation of Franklin's mental impairment was based upon substantial evidence. In addition, the ALJ's hypothetical question was proper. Because there are no genuine issues of material fact in dispute and because Secretary is entitled to judgment in her favor as a matter of law, Secretary's motion for summary judgment is granted and both facets of

Franklin's motion are denied. This action is dismissed.