111 F.3d 133
 NOTICE: Seventh Circuit Rule 53(b)(2) states unpublished orders shall not be cited or used as precedent except to support a claim of res judicata, collateral estoppel or law of the case in any federal court within the circuit.
Betty GIBSON-JONES, Plaintiff-Appellant,
v.
Shirley S. CHATER, Commissioner of the Social Security
Administration, Defendant-Appellee.
 No. 96-2626.
 United States Court of Appeals, Seventh Circuit.
 Argued Feb. 12, 1997.
Decided April 14, 1997.
 
 Before CUMMINGS, BAUER and FLAUM, Circuit Judges.
 
 ORDER
 
 1
 Betty Gibson-Jones appeals from the district court's May 4, 1996 order affirming the denial of her application for disability benefits by the Social Security Administration ("the Administration"). Gibson-Jones asks us to reverse the Administration's decision and to award benefits, or, alternatively, to remand to the Administration for a new hearing.
 
 
 2
 In 1992, Gibson-Jones applied for (1) disability insurance benefits, (2) a period of disability, and (3) supplemental security income, under Titles II and XVI of the Social Security Act, 42 U.S.C. §§ 301 et seq. ("the Act"). She alleged that she was disabled under the Act because she suffers from an array of gynecological, kidney, and bladder problems.[1] Her application was denied both initially and upon reconsideration. On October 6, 1993, a hearing was held before an administrative law judge ("ALJ") regarding Gibson-Jones' requests. At the time of the hearing, Gibson-Jones was twenty-seven years old and had three children.
 
 
 3
 Gibson-Jones testified that as a result of these health problems, she experiences severe pain and must lie down with her feet elevated two times per day and take medication once or twice per day to alleviate the pain. She testified that the pain medication makes her dizzy, drowsy and nauseous to the point that she can barely walk, and that these side-effects last approximately two to three hours. She takes the medication daily, and without it, she is in severe pain. She also testified that she can sit for an hour to an hour and a half, and then has to stand and move around. She can stand for two to two and a half hours before she has to move around, and she must alternate between sitting, standing and moving around.
 
 
 4
 At the time of the hearing, Gibson-Jones was taking thirteen credit hours of college courses. She testified as to the following schedule: She would attend class from 9:00 a.m. to 9:50 a.m., return home for three hours to take the pain medication and nap, and then return to school for classes from 1:00 p.m. to 2:50 p.m. She testified that she maintained a grade point average of 3.75, but that she had missed approximately three months of classes in the previous semester as a result of her medical problems. She also testified that she was able to care for her three children, ages three, four and five, only with help from family members.
 
 
 5
 A vocational expert ("VE") also testified at the hearing. The VE indicated that Gibson-Jones could qualify for a number of sedentary jobs with a sit/stand option. The VE also indicated, however, that if Gibson-Jones did indeed have to lie down during the day, all jobs would be ruled out.
 
 
 6
 The ALJ issued a decision on April 29, 1994 denying Gibson-Jones' request for disability and indicating that she qualified for sedentary jobs with a sit/stand option. In the decision, the ALJ explained how disability must be established under the Act:
 
 
 7
 To establish "disability" as defined by the law, the evidence must establish that the claimant has a severe impairment or impairments which cause the claimant to have significant restrictions in the ability to perform basic work-related activities and that because of such restrictions the claimant is unable to return to past relevant employments, or to any other jobs which exist in significant numbers in the several regions of the country or in the national economy. Additionally ... it must be established that such condition of disability has lasted the requisite 12-month period, or can reasonably be expected to result in claimant's death.
 
 
 8
 The ALJ found that Gibson-Jones "has not engaged in substantial gainful activity subsequent to August 29, 1990," and that her medical conditions "have limited [her] physical capacity to perform basic-related functions since August 29, 1990" and "prevent her from returning to her past relevant work." The ALJ rejected Gibson-Jones' testimony that she needed to lie down during the day, however, and found that she retained residual functional capacity to perform sedentary work in which she would be able to alternate between sitting and standing. The ALJ also found that there were appropriate jobs available in the local and national economies and, therefore, concluded that Gibson-Jones "is not and was not at anytime on or before the date of this decision disabled by the provisions of [the Act]."
 
 
 9
 After the Appeals Council of the Administration decided that there was no basis under its regulations to grant her request for review, Gibson-Jones filed an action pursuant to 42 U.S.C. § 405(g) in district court, seeking judicial review of the Administration's decision. The district court granted summary judgment in favor of the Administration on May 14, 1996, finding that the ALJ's decision was supported by substantial evidence in the record. Gibson-Jones appeals from this decision, primarily arguing that the ALJ improperly analyzed the relevant evidence and that there is no support in the record for the ALJ's rejection of Gibson-Jones' testimony.
 
 
 10
 Because the Appeals Council denied Gibson-Jones' request for review, the ALJ's decision is the final decision of the Commissioner. Luna v. Shalala, 22 F.3d 687, 689 (7th Cir.1994); Herron v. Shalala, 19 F.3d 329, 332-33 (7th Cir.1994) (citing 20 C.F.R. § 404.981; Jones v. Shalala, 10 F.3d 522, 523 (7th Cir.1993)). We review the ALJ's factual findings to determine whether they are supported by substantial evidence in the record as a whole. Wolfe v. Shalala, 997 F.2d 321, 322 (7th Cir.1993) (citations omitted); see also Luna, 22 F.3d at 689; Herron, 19 F.3d at 333. If they are supported by substantial evidence and we find no error of law, the decision must be affirmed. Wolfe, 997 F.2d at 322 (citations omitted). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Luna, 22 F.3d at 689 (citations omitted); Herron, 19 F.3d at 333 (citations omitted). We will not reevaluate the facts, reweigh the evidence, or substitute our own judgment for that of the ALJ. Luna, 22 F.3d at 689 (citing Edwards v. Sullivan, 985 F.2d 334, 336 (7th Cir.1993)).
 
 
 11
 A five-step inquiry outlined in Social Security Regulations determines disability status. Herron, 19 F.3d at 333 n. 8 (citing 20 C.F.R. § 1520(a)-(f)). To determine disability, the ALJ must address the following questions in sequential order: (1) whether the claimant is presently employed; (2) whether the claimant's impairment or combination of impairments is severe; (3) whether his or her impairments meet or exceed any of the specific impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 which the [Commissioner] acknowledges to be conclusively disabling; (4) whether the claimant's impairments limited his or her remaining or "residual" functional capacity to the point that he or she is no longer able to perform the demands and duties of a former occupation; and (5) whether the claimant is unable to perform any other work in the national economy given his or her age, education and work experience. Wolfe, 997 F.2d at 322-23 (citing 20 C.F.R. § 416.920(a)-(f); Bowen v. Yuckert, 482 U.S. 137, 140-42; Young v. Secretary of Health and Human Services, 957 F.2d 386, 389 (7th Cir.1992); Prince v. Sullivan, 933 F.2d 598, 602 (7th Cir.1991)); see also Herron, 19 F.3d at 333 n. 8. If the claimant reaches Step 5, the Commission bears the burden of proving that there are jobs in the national economy that the claimant can perform. Herron, 19 F.3d at 333 n. 8.
 
 
 12
 In this case, the ALJ decided the case at Step 5, when he found that Gibson-Jones was capable of performing other work in the national economy, specifically, sedentary work with a sit/stand option. The ALJ concluded this, partially because he did not believe Gibson-Jones' testimony. The ALJ stated that he did not find "the claimant's testimony with respect to her need to lie down to be credible or convincing." He found Gibson-Jones' testimony that she required assistance caring for her children to be "inconsistent with her attempting to attend college at the same time." The ALJ also stated that it was "inconsistent for the claimant to be able to attend college courses if she experiences such severe symptoms on a disabling regularity."
 
 
 13
 At the hearing, the VE testified that Gibson-Jones' need to lie down would "rule out" her ability to work a sedentary job. But, as the district court pointed out, the ALJ did not believe Gibson-Jones' testimony that she needed to lie down and, therefore, "need not have considered the vocational expert's response...." Moreover, the district court noted that the ALJ need not have asked the VE about possible side-effects from pain medication because the ALJ "simply did not believe that Ms. Gibson-Jones had to take pain medication with debilitating side effects every day."
 
 
 14
 The issue for our review, then, is whether there is substantial evidence in the record from which the ALJ could disbelieve Gibson-Jones' testimony about her symptoms and her need to lie down. Gibson-Jones asks us to follow our decisions in Herron v. Shalala, 19 F.3d 329 (7th Cir.1994) and Sarchet v. Chater, 78 F.3d 305 (7th Cir.1996), in which we questioned an ALJ's determination that the claimant was not entitled to benefits. In Herron, we stated that "[o]ur cases consistently recognize that meaningful appellate review requires the ALJ to articulate reasons for accepting or rejecting entire lines of evidence." Herron, 19 F.3d at 333 (emphasis added) (citations omitted). In Herron, the claimant argued that the ALJ had failed to give a reason for rejecting evidence related to the debilitating side-effects of the claimant's pain medication. As in the present case, the ALJ in Herron had questioned the credibility of the claimant's testimony because he found certain aspects of it to be inconsistent. On review, this Court did not feel that the ALJ had sufficiently explained why he rejected Herron's testimony regarding his subjective complaints of pain. We stated:
 
 
 15
 Because we have concluded that the inconsistencies in Herron's testimony do not exist, and the ALJ has not provided us with any other reason for rejecting Herron's testimony, we are left without a basis to uphold the ALJ's credibility determination.... Nonetheless, we find it unnecessary to reverse the ALJ's credibility finding at this point. Instead, we will remand the issue to the ALJ so that he may better articulate the grounds for his decision since meaningful appellate review at this juncture is impossible.
 
 
 16
 Herron, 19 F.3d at 336.
 
 
 17
 Today we conclude, as we did in Herron, that Gibson-Jones' testimony was not necessarily inconsistent. Because the ALJ has not provided us with any other reason to reject Gibson-Jones' testimony, we are left without a basis to uphold his credibility determination. The ALJ stated that he was "unable to find a medical basis for [Gibson-Jones'] need to frequently lie down for pain relief which is contrary to her demonstrated ability to engage in sustained activities by attending college courses in addition to caring for minor children." However, we do not believe that Gibson-Jones' attendance at school or her limited ability to care for her children indicate per se that she was not disabled. We believe it is plausible for Gibson-Jones to experience the symptoms she described and need to lie down, while still being able to attend classes and minimally care for her children with the assistance of relatives.
 
 
 18
 We explained our role in reviewing such decisions in Sarchet: "When the decision of [the first-line tribunal with regard to issues of fact] is unreliable because of serious mistakes or omissions, the reviewing court must reverse unless satisfied that no reasonable trier of fact could have come to a different conclusion, in which event a remand would be pointless." 78 F.3d at 308-09 (citing O'Connor v. Sullivan, 938 F.2d 70, 73-74 (7th Cir.1991); Green v. Shalala, 51 F.3d 96, 101 (7th Cir.1995)). As in Sarchet, we believe that reasonable triers of fact could have heard Gibson-Jones' testimony and not necessarily found it to be inconsistent. We recognize that in Sarchet, the ALJ displayed skepticism toward the claimant's ailments. We do not detect the same level of skepticism by the ALJ in this case; nevertheless, we do require the ALJ to point to more substantial evidence for rejecting Gibson-Jones' testimony.
 
 
 19
 As in Herron, we believe the ALJ should articulate more substantial grounds for disbelieving Gibson-Jones' testimony. The ALJ is certainly entitled to consider such factors as Gibson-Jones' college attendance and her ability to care for her children. However, as we said in Sarchet, "[W]e cannot uphold a decision by an administrative agency ... if, while there is enough evidence in the record to support the decision, the reasons given by the trier of fact do not build an accurate and logical bridge between the evidence and the result." 78 F.3d at 307 (citations omitted). We do not find a logical bridge here.
 
 
 20
 We therefore reverse the judgment of the district court and remand the case to the ALJ so that he may identify more specific medical evidence supporting his rejection of Gibson-Jones' testimony that she needed to lie down daily. The ALJ must more specifically articulate his reasons for believing that Gibson-Jones' testimony is contradictory and inconsistent. If the ALJ is unable to articulate more specific reasons, he must award Gibson-Jones the relief she requests because, if she needs to lie down daily, she will be unable to perform even sedentary work with a sit/stand option.
 
 
 
 [1]
 Gibson-Jones gave birth to her first child by Caesarean section in November 1987 and was thereafter plagued by a number of gynecological problems. The ALJ included medical evidence in his decision that established that Gibson-Jones has the following medical conditions: pelvic adhesive disease requiring a tubal ligation, lysis of adhesion, revision of scarring, adhesiolysis and total abdominal hysterectomy; endometrioma requiring Lupron therapy; pelvic mass requiring adhesiolysis and bilateral salpingo-oophorectomy; and chronic recurrent urinary tract infections