Ana M. ANDINO, Plaintiff,

v.

Otis R. BOWEN, M.D., Secretary of Health and Human Services, Defendant.

No. 84 Civ. 8226 (RLC).

United States District Court, S.D. New York.

March 12, 1987.

The Legal Aid Society Community Law Offices, New York City, for plaintiff; David W. Weschler, counsel of record; Pamela S. Hoopes, of counsel.

Rudolph W. Giuliani, U.S. Atty. for the S.D.N.Y., New York City, for defendant; Donna H. Lieberman, Sp. Asst. U.S. Atty., of counsel.

## OPINION

ROBERT L. CARTER, District Judge.

Plaintiff Ana Andino appeals from a denial of her claims for Supplemental Security Income ("SSI") disability benefits pursuant to sections 205(g) and 1631(c)(3) of the Social Security Act ("the Act"), 42 U.S.C. §§ 405(g) and 1383(c)(3). She moves for judgment on the pleadings pursuant to Rule 12(c), F.R.Civ.P. Defendant Otis Bowen, Secretary of Health and Human Services ("the Secretary") moves to remand this case for redetermination pursuant to the Social Security Benefits Reform Act of 1984 ("the Reform Act"), Pub.L. No. 98–460, 98 Stat.1794, an uncodified section following 42 U.S.C. § 421.

## BACKGROUND

Andino was born in Puerto Rico in 1953 and moved to the mainland thirty years later. (Trial Transcript ["Tr."] 44). She has never been married and lives at home with her mother. (Tr. 30). She does not understand English. Andino has a bachelor's degree in business administration from a college in Puerto Rico, but her sole work experience consists of clerical work she did during college as part of a work-study program, and a part-time job lasting a few months during 1981 or 1982 which she was forced to leave because of migraine headaches and other physical and psychological ailments described in greater detail below. (Tr. 44).

## A. Medical History

For a relatively young woman, Andino suffers from an extraordinary array of afflictions. Her physical afflictions generally affect her vision. Her treating eye doctor at the New York Eye and Ear Infirmary Eye Clinic report that she has very poor vision, photophobia (sensitivity to light), amblyopia (a partial loss of sight), ocular albinism (an absence of pigment in the eye), congenital rotary nystagmus (an involuntary movement of the eyeball about the visual axis) and resulting headaches. (Tr. 132–33). She has undergone three operations to correct strabismus (an involuntary deviation of the eye). (Tr. 135). On October 3, 1983, the clinic concluded that she "will not be able to work at present until her condition improves." (Tr. 120–21). On April 26, 1984, Dr. John Seedor of the New York Eye and Ear Infirmary, responding to a residual functional capacity questionnaire, diagnosed Andino as suffering from rotary nystagmus with probable amblyopia of both eyes. He did not expect any change in her condition for at least 12 months. (Tr. 160–61).

As for her remaining physical ailments, on April 23, 1984, Andino was diagnosed by the outpatient department at Mount Sinai Medical Center as suffering from migraine headaches, allergic rhinitis (sinus trouble that makes her unable to tolerate dust, smoke, or strong odors), and an enlarged thyroid. A consulting physician, Dr. John Bortz, found that Andino suffers from arthritis in her hands, ankles and feet, migraine headaches, and chest pains consistent with atherosclerotic heart pains. (Tr. 91–93).

Her treating psychiatrist, Dr. Michelene Loubeau, reports that Andino has had a history of emotional problems since childhood. The doctor noted that Andino is depressed, poorly motivated, withdrawn, unable to have relationships, irritable, forgetful, suffers from crying spells, frequent headaches, and experiences auditory hallucinations when people call her name. She diagnosed Andino as suffering from residual schizophrenia and a schizoid personality. The prognosis was guarded, but was ex-

pected to last at least twelve months. (Tr. 155).

Doctor Loubeau noted that Andino does not travel alone by bus or subway because of insecurity caused by her poor vision. *Id.* She noted that her inability to relate to people, her withdrawal, and her eye trouble impair her functional activity. (Tr. 157). She recommended that Andino not return to work, although she found that Andino was not precluded from performing simple work where contact with others was minimal. (Tr. 156–57).

Dr. Marsha Knight, a consulting clinical psychologist, found that Andino's mental functioning tested in the "borderline, defective" range, and that she suffers from "severe emotional problems," principally hyperdependency. (Tr. 111). She cited these emotional impairments to explain why Andino tests so poorly and writes at a grade-school level, despite the fact that she has a college degree. Although she found Andino to have the potential to work, she indicated that her emotional problems would prevent the patient from doing so until an undetermined future date. *Id.*[1] Dr. Joshua Algaze, a consulting psychiatrist, found that Andino suffers from a "psychological illness resulting in personal, social, and occupational maladjustment," and diagnosed her as having a "borderline personality with depressive features." (Tr. 119).

## B. Procedural History

On July 12, 1983, Andino applied for SSI benefits on the grounds that since 1981 she has suffered from visual impairments, sinus trouble, trouble with her nerves, thyroid problems, and arthritis in her feet. (Tr. 45). The application was denied, as was her request for reconsideration. A hearing was held before Administrative Law Judge Newton Greenberg ("the ALJ") on May 30, 1984. In a June 15, 1984, decision the ALJ found that Andino "has a

severe visual impairment and a severe emotional impairment," but denied her claim for disability benefits. He found that her impairments do not meet or equal the "listed impairments" detailed in the regulations promulgated under the Act which indicate presumptive disability. 20 C.F.R. Part 404, Subpt. P, App. 1. He determined that although she has no relevant past work experience and no transferable skills, she has the residual functional capacity to perform light work not requiring good vision or exposure to a highly polluted environment. (Tr. 17).[2] The Appeals Council denied Andino's request for reconsideration on September 10, 1984, making the ALJ's decision the final decision of the Secretary.

## DISCUSSION

Assuming the Secretary has applied the proper legal standards, the scope of judicial review is confined to a determination of whether the Secretary's conclusions are supported by "substantial evidence." *Moore v. Secretary of the Dep't of Health and Human Services,* 778 F.2d 127, 130 (2d Cir.1985). "Substantial evidence" means more than a scintilla of evidence, that is, relevant evidence that would, in the mind of a reasonable decisionmaker, support the conclusion reached. *Richardson v. Perales,* 402 U.S. 389, 401, 91 S.Ct. 1420, 1427, 28 L.Ed.2d 842 (1971). Where evidence has not been properly evaluated because of the application of an erroneous legal standard, however, the Secretary's decision cannot be sustained. *Marcus v. Califano,* 615 F.2d 23, 28 (2d Cir.1979).

■ A claimant seeking social security benefits is considered disabled if he is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected ... to last for a continuous period of not less than 12 months." *Bluvband v. Heckler,* 730 F.2d

---

1. This reasonably can be inferred from her belief that Andino required psychotherapy to make it possible for her "eventually" to be able to work. (Tr. 111).

2. Specifically, he suggested that she was able to do "simple routine assembly and/or packing of

moderate sized objects, messenger or shelving stock work in known surroundings, simple inspection and sorting not requiring fine vision, and food service tray line and cafeteria service." (Tr. 16).

886, 890 (2d Cir.1984) (citing 42 U.S.C. § 416(i)(1)(A)). The claimant can be found disabled only if his:

physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work.

42 U.S.C. § 423(d)(2)(A). Where, as here, the claimant has no relevant past work experience and no transferable skills, the Secretary bears the burden of proving that there is work the claimant can do. *Bluvband, supra,* 730 F.2d at 891 (citing *Heckler v. Campbell,* 461 U.S. 458, 103 S.Ct. 1952, 76 L.Ed.2d 66 (1983)).[3]

■ To determine whether a claimant is disabled, the Secretary must consider objective medical facts, diagnoses and medical opinions based on those facts, subjective evidence of pain and disability testified to by the claimant and other witnesses, as well as the claimant's educational background, age, and work experience. *Bluvband, supra,* 730 F.2d at 890; *Mimms v. Heckler,* 750 F.2d 180, 185 (2d Cir.1984).

■ In assessing these factors, the Secretary operates as fact-finder, and it is his job to resolve evidentiary conflicts. With respect to medical evidence, however, the opinion of a treating physician is binding on the Secretary unless contradicted by substantial evidence to the contrary, *Moore, supra,* 778 F.2d at 131, and the

treating physician's opinion is entitled to more weight than that of a physician consulted at the Secretary's request. *Bluvband, supra,* 730 F.2d at 893. Most important, the Secretary must consider all the evidence in the record; he cannot "pick and choose" evidence that supports a particular conclusion. *Fiorello v. Heckler,* 725 F.2d 174, 175–76 (2d Cir.1983). His "failure to acknowledge relevant evidence or explain its implicit rejection is plain error." *Ceballos v. Bowen,* 649 F.Supp. 693, 702 (S.D.N.Y.1986) (Ward, J.) (citing *Valente v. Secretary of Health and Human Services,* 733 F.2d 1037, 1045 (2d Cir.1984)).

Turning to the facts of this case, it is clear that the Secretary overstepped his role. The ALJ, whose opinion represents the final decision of the Secretary in this matter, ignored extremely relevant evidence, misrepresented other evidence, and substituted his own judgment for that of medical experts in an analysis that at times tended toward the bizarre.

■ The ALJ's most egregious error was his failure to mention (and thus, the court must assume, to consider) the opthalmology clinic's unopposed conclusion that Andino's eye trouble rendered her unable to work, as well as the opinions of Dr. Loubeau and Dr. Knight that she was unable to work at present. Where, as with the eye clinic's diagnosis, there was no substantial evidence to the contrary, the ALJ was bound to accept its opinion that Andino is unable to work. *Moore, supra,* 778 F.2d at 131. Moreover, the failure to acknowledge the obviously relevant opinions of all three doctors is plain error. *Valente, supra,* 733 F.2d at 1045; *Ceballos, supra,* 649 F.Supp. at 702.

3. This is the final step of a five-step process set forth in *Berry v. Schweiker,* 675 F.2d 464, 467 (2d Cir.1982) (per curiam):

First, the Secretary considers whether the claimant is currently engaged in substantial gainful activity. If he is not, the Secretary next considers whether the claimant has a "severe impairment" which significantly limits his physical or mental abilty to do basic work activities. If the claimant suffers such an impairment, the third inquiry is whether, based solely on medical evidence, the claimant has an impairment which is listed in Ap-

pendix 1 of the regulations. If the claimant has such an impairment, the Secretary will consider him disabled without considering vocational factors such as age, education, and work experience.... Assuming the claimant does not have a listed impairment, the fourth inquiry is whether, despite the claimant's severe impairment, he has the residual functional capacity to perform his past work. Finally, if the claimant is unable to perform his past work, the Secretary then determines whether there is other work which the claimant could perform.

Not only did the ALJ fail to consider relevant evidence, but he misrepresented the evidence he did consider. As noted above, Dr. Algaze, the consulting psychiatrist, had concluded that Andino "suffer[s] from psychiatric illness resulting in personal, social and occupational maladjustment." (Tr. 119). The ALJ instead reported that Dr. Algaze had found that she does *not* suffer from psychiatric illness. (Tr. 15). This mistake may simply have been a typographical error. The misstatement of the diagnosis, however, immediately precedes the rejection of Dr. Loubeau's diagnosis in the ALJ's opinion (Tr. 15), suggesting that it may have significantly affected his decision.

Consistent with the rule that the Secretary must consider all the relevant evidence is the requirement that the Secretary may not "substitute his or her own inferential judgment for a competent medical opinion, particularly where the ALJ's judgment assumes some degree of medical expertise and would amount to rendering an expert medical opinion which is based on competence he or she does not possess." *Ceballos, supra,* 649 F.Supp. at 700 (citing *McBrayer v. Secretary of Health and Human Services,* 712 F.2d 795, 799 (2d Cir. 1983)). Yet, the ALJ's opinion is replete with this type of analysis. Perhaps the most illustrative example is his rejection of psychological tests which, according to Dr. Knight, the administering psychologist, showed that Andino functions in the "borderline, defective range." (Tr. 110). Dr. Knight had found that the tests "reflect [Andino's] abilities well." *Id.* The ALJ, however, concluded:

> Little value is placed in August 8, 1983 psychological testing results because of the claimant's poor vision "wearing glasses lacking one stem" or arm, possible cultural biases, and the examiner's

opinion "that this is a potentially average, intelligent, thirty year old woman, who functions well below this at this time, due to a severe dependency disorder, and possibly borderline personality of the type once classified (as a) dependent personality. She made many errors in verbal tasks, consisting of answering in terms of obeying a higher authority rather than reasoning things out for herself. For example, when asked what she would do if she found something in the street she said she would ask her mother. One must remember this is a thirty year year old woman saying this." While this was not the expected answer, it must be measured against the claimant's cultural background and the fact that she is partially sighted and would be taking the object, especially an addressed letter, to a person with better eyesight, that is her mother. Some degree of dependence is not unexpected for a partially sighted individual; the point that should be emphasized was the excessive dependency and signs of immaturity.

(Tr. 14). The record provides no clue as to what "cultural biases" the ALJ refers to, nor how such biases affect one's performance on a psychological test. Also unclear is how the ALJ is better situated to assess the effect of the missing eyeglass stem than the doctor who administered the tests. What is clear is that the ALJ based his decision on a medical analysis he was not competent to make. *McBrayer, supra,* 712 F.2d at 799; *Ceballos, supra,* 649 F.Supp. at 700, 702.[4]

Even if the ALJ had given appropriate weight to the evidence before him, the court finds that the evidence does not substantially support a finding that Andino is capable of performing light, or even sedentary work.[5] Under the law of this circuit,

---

4. Another example of this type of overreaching analysis is the ALJ's conclusion that Andino's performance on a cardiac stress test resulted from an "inactive life style." (Tr. 14).

5. The relevant regulatory definitions are as follows:

(a) *Sedentary work.* Sedentary work involves lifting no more than 10 pounds at a time and

occasionally lifting or carrying articles like docket files, ledgers, and small tools. Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties. Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met.

the Secretary must consider the *combined effect* of a claimant's impairments. *De Leon v. Secretary of Health and Human Services*, 734 F.2d 930, 937 (2d Cir.1984). Andino's opthalmological and psychological impairments alone arguably support disability; taken together, and considered along with her documented migraine headaches, strabismus, arthritis, chest pains, and rhinitis, the evidence of disability is overwhelming. Indeed, in light of Andino's inability to take the bus or subway by herself, it is not only clear that Andino is unable to work, but it is hard to imagine how she could even get to work on a regular basis.

### DISPOSITION

■ The Secretary moves to remand this case under Section 5(c)(1) of the Reform Act,[6] which provides that a determination that an individual is not under disability by reason of mental impairment made after October 9, 1984, should be redetermined by the Secretary under standards promulgated under the new legislation.

■ Since Andino was denied benefits before the operative date, remand is not required in this case. *Torres v. Bowen*, No. 82 Civ. 6103 (S.D.N.Y. July 8, 1986) (Carter, J.) [Available on WESTLAW, DCT database]. Although that does not necessarily mean that remand is inappropriate, the impetus for the Reform Act was to provide regulations more favorable to claimants, *Torres, supra,* slip op. at 4, and a more "humane and understanding appeal

process." H.R.Rep. No. 98–618, 98th Cong., 2d Sess. (1984), *reprinted in* 1984 U.S.Code Cong. & Admin.News, 3038, 3039. Thus, as several courts have recognized, it would be contrary to the very purpose of the new legislation to remand a case such as this, where benefits must be awarded regardless of which standards are applied. *See Stewart v. Heckler*, 599 F.Supp. 298, 300 & n. 6 (S.D.N.Y.1984) (Sprizzo, J.); *Blocho v. Secretary of Health and Human Services*, 634 F.Supp. 930, 932 (W.D.N.Y. 1986). Here the Secretary's decision that Andino is capable of work was not based on substantial evidence and was arrived at based on the application of improper legal standards. As the court explained in *Blocho*, "the remand provision is intended primarily to protect claimant[s] by insuring that the appropriate ... standard is applied in those instances where it is germane to the ultimate disposition of the case. It would not be germane, and hence should not be applied, where benefits may be awarded on an independent ground." *Id.* at 932.

Accordingly, Andino's motion for judgment on the pleadings is granted, and defendant's motion to remand is denied. The decision of the Secretary is reversed and remanded for the sole purpose of computing benefits.

IT IS SO ORDERED.

---

(b) *Light work.* Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all these activities. If someone can do light work, we determine that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time.

20 C.F.R. §§ 404.1567(a), 404.1567(b).

6. Section 5(c)(1) provides:

Any initial determination that an individual is not under a disability by reason of a mental impairment and any determination that an individual is not under a disability by reason of a mental impairment in a reconsideration of or hearing on an initial disability determination, made or held under Title II or XVI of the Social Security Act after the date of the enactment of this Act [Oct. 9, 1984] and prior to the date on which revised criteria are established by regulation in accordance with subsection (a) ... shall be redetermined by the Secretary as soon as feasible after the date on which such criteria are so established, applying such revised criteria.

Pub.L. No. 98–460, § 5(c)(1), 98 Stat. 1794.